IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:16CR73DPJ-LRA

MARCUS SHELBY

**PLEA HEARING**

BEFORE THE HONORABLE DANIEL P. JORDAN III
UNITED STATES DISTRICT JUDGE
DECEMBER 21ST, 2016
JACKSON, MISSISSIPPI

APPEARANCES:

FOR THE GOVERNMENT:  MR. JERRY L. RUSHING

FOR THE DEFENDANT:   MR. SANFORD E. KNOTT

REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR

_____

402 Autumn Creek Drive
Ridgeland, Mississippi  39157
(601) 613-6135

1    (COURT CALLED TO ORDER)

2        THE COURT:  Thank you.  You may be seated.  All right,

3    Mr. Rushing.

4        MR. RUSHING:  Yes, Your Honor.  Your Honor, on the

5    docket today we have *United States v. Marcus Shelby.*  It's

6    cause number 3:16cr73DPJ-LRA.  We're present before the court

7    today for a change of plea as to Count 1 of the indictment,

8    Your Honor, from a plea of not guilty to guilty.  Mr. Shelby is

9    being represented by the Honorable Sanford Knott.

10        THE COURT:  All right.  Thank you.

11        MR. RUSHING:  Yes, sir.

12        THE COURT:  Give me one second, Mr. Knott.

13    (PAUSE)

14        THE COURT:  All right.  Mr. Knott, if you would come

15    forward with your client.

16    (COMPLIED WITH REQUEST)

17        MR. KNOTT:  Judge, good afternoon.

18        THE COURT:  Good afternoon.  Mr. Knott, if you don't

19    mind, why don't you switch with your client, get him closer to

20    that Bible there.

21        MR. KNOTT:  Absolutely.

22        THE COURT:  All right.  Mr. Shelby, good afternoon.

23        THE DEFENDANT:  Hi, Your Honor.

24        THE COURT:  My understanding is you wish to change

25    your plea as to Count 1 of the indictment.  Is that correct?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Okay.  If you would, do me a favor and

3    speak up and speak directly into that microphone.  We're going

4    to record everything that you and I say.  Okay?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Okay.  Ms. Powell, is going to give you an

7    oath.

8        (DEFENDANT WAS ADMINISTERED THE OATH)

9              THE COURT:  All right.  Mr. Shelby, you understand

10   that you're now under oath?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Okay.  You don't have put your hand on the

13   Bible.  And do you understand that your answers to my questions

14   have to be truthful?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you understand that if your answers are

17   not truthful that you might subject yourself to further

18   prosecution for giving a false statement?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  All right.  What is your full name?

21             THE DEFENDANT:  Marcus Shelby.

22             THE COURT:  All right.  Mr. Shelby, if I ask you a

23   question this afternoon that you can't hear or if you don't

24   understand the question or if there's anything about the

25   question you're not sure about, I want you to ask me and I'll

1    be happy to restate it or repeat it for you.  Okay?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Also if at any point you need to speak

4    with Mr. Knott, let me know and I'll be happy to let the two of

5    you step back and do that.  All right?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  If you answer my question, I'm going to

8    assume that you heard it, that you understood it and that you

9    gave me a truthful response.  Is that fair?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  The first thing I need to do is make sure

12   you're competent to enter a plea.  There's a set of standard

13   questions here I ask everybody.  The first one is, how old are

14   you?

15        THE DEFENDANT:  34.

16        THE COURT:  How far did you go in school?

17        THE DEFENDANT:  Tenth grade.

18        THE COURT:  All right.  Are you able to read and

19   write?

20        THE DEFENDANT:  Couldn't hear you.

21        THE COURT:  Sure.  Are you able to read and write?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Have you ever been treated for any mental

24   illnesses?

25        THE DEFENDANT:  No, sir.

```
1          THE COURT:  Have you ever been treated for any
2   addictions to narcotics of any kind?
3          THE DEFENDANT:  No, sir.
4          THE COURT:  Are you currently under the influence of
5   any drug, medication or alcoholic beverage of any kind?
6          THE DEFENDANT:  No, sir.
7          THE COURT:  Are you capable of consulting with your
8   attorney and understanding what he's telling you?
9          THE DEFENDANT:  Yes, sir.
10         THE COURT:  Do you understand why we're here today and
11  what's happening?
12         THE DEFENDANT:  Yes, sir.
13         THE COURT:  Okay.  And do you understand the
14  seriousness of the proceedings?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  And on the date of the charged offense
17  were you mentally capable of knowing the difference between
18  right and wrong?
19         THE DEFENDANT:  No, sir.
20         MR. KNOTT:  Court's indulgence.
21         THE COURT:  Sure.
22     (COUNSEL AND DEFENDANT CONFERRED)
23         MR. KNOTT:  Judge, would you repeat that question
24  again?
25         THE COURT:  Sure.  On the date of the charged offense
```

1  here, conspiracy to possess with intent to distribute drugs,

2  did you know the difference between right and wrong at that

3  time?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  And did you know that it was wrong

6  to possess with the intent to distribute cocaine hydrochloride?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  So, Mr. Knott, have you -- I

9  know you've had some good opportunities to meet with your

10  client.  Are you satisfied that he's capable of effectively

11  communicating with you?

12          MR. KNOTT:  I am, Your Honor.

13          THE COURT:  And are you satisfied that he is capable

14  of understanding these proceedings?

15          MR. KNOTT:  He's quite capable, Your Honor.

16          THE COURT:  And do you have any reservations with

17  respect to his competence to enter a plea?

18          MR. KNOTT:  I do not.

19          THE COURT:  Does the government?

20          MR. RUSHING:  No, Your Honor.

21          THE COURT:  All right.  Mr. Shelby, have you received

22  a copy of the indictment?  Those are the written charges

23  against you in this case.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Okay.  And I think Mr. Knott is probably

```
 1    putting a copy of it in front of you just to be sure.  You've
 2    seen that document, have you not?
 3              THE DEFENDANT:  Yes, sir, I've seen it.  Yes, sir.
 4    Yes, sir, I have.
 5              THE COURT:  Okay.  And did you read the entire
 6    document, including Count 1?
 7              THE DEFENDANT:  Yes, sir, I have.
 8              THE COURT:  And did you have a chance to discuss those
 9    charges and any other possible charges with your attorney?
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  Did you have a chance to ask Mr. Knott any
12    questions that you might have about what is charged in the
13    indictment and in particular in Count 1?
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  Did you have a chance to discuss any
16    possible defenses that you might have in your case in general
17    with Mr. Knott?
18              THE DEFENDANT:  Yes, sir.
19              THE COURT:  Okay.  And was Mr. Knott able to answer
20    your questions for you?
21              THE DEFENDANT:  Yes, sir.
22              THE COURT:  Okay.  And can you tell me that you fully
23    understand what you are charged with in the indictment and in
24    particular Count 1 of the indictment?
25              THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Okay.  Mr. Knott, would you agree that

2    you've had those discussions and that your client does

3    understand the charges against him?

4          MR. KNOTT:  Yes.  We've discussed it.  We've discussed

5    the defenses, and he's quite capable of understanding and

6    responding and assisting counsel.  He definitely understands.

7          THE COURT:  And he understands the nature of the

8    charges?

9          MR. KNOTT:  That is correct, Your Honor.

10         THE COURT:  All right.  Mr. Sanford -- I'm sorry.

11   Mr. Shelby, let me ask you, are you satisfied with the amount

12   of time you've had to spend with your attorney?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Are you satisfied with the amount of time

15   that your attorney has spent on your case?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Are you fully satisfied with the counsel,

18   representation and advice given to you in this case by your

19   attorney, Mr. Knott?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  If you have any complaints

22   about your attorney, today is the best day to let us know.  Do

23   you have any complaints?

24         THE DEFENDANT:  No, sir, I don't.

25         THE COURT:  Very good.  All right.  It's my

1  understanding that you and Mr. Knott have had some

2  conversations with the attorney for the government about

3  entering a plea.  Is that correct?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  It's also my understanding that those

6  conversations resulted in a plea agreement and a supplement to

7  that agreement.  Is that right?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Did you have an opportunity to read and

10  discuss both the plea agreement and supplement with your

11  attorney before you signed those two documents?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  And were you able to ask him any questions

14  that you might have about what you're agreeing to in those two

15  documents?

16        MR. KNOTT:  Court's indulgence.

17        THE COURT:  Sure.

18     (COUNSEL AND DEFENDANT CONFERRED)

19        MR. KNOTT:  Judge, he was concerned about ultimately

20  how much time he would receive.  I've indicated to him that

21  neither I nor you can tell him at this point in time until we

22  go through the next stage of the process and I've explained

23  that process to him.

24        THE COURT:  That's certainly true.  My question at

25  this point, you have those two documents in front of you.

1   There's a plea agreement and a supplement.  And I'd like to

2   know, did you have a chance to ask your attorney any questions

3   that you might have had about those two documents?

4            THE DEFENDANT:  Yes, sir, I have.

5            THE COURT:  And was he able to answer your questions

6   for you?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  And is there anything about those two

9   documents that remains unclear to you at this point?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  So you fully understand what you're

12  agreeing to with the government.

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  All right.  Again, Mr. Knott, would you

15  agree you've had those conversations and that your client does

16  understand his agreement with the government?

17           MR. KNOTT:  He does, Your Honor.

18           THE COURT:  All right.  So, Mr. Shelby, at this point

19  Mr. Rushing is going to give us the key provisions of your

20  agreement.

21           MR. RUSHING:  Your Honor, there is, of course, a plea

22  agreement and also a plea supplement.  The plea supplement

23  itself contains the recommendations by the government and at

24  the time of sentencing of the defendant also.  The plea

25  agreement itself contains certain provisions that we've agreed

1    to with the defendant.

2           Paragraphs 8 of that actual plea agreement contain

3    certain waivers, and the defendant understands he's waived his

4    right to appeal the conviction and the sentence imposed in this

5    case or the manner in which the sentence was imposed on any

6    grounds whatsoever.

7           He also waives the right to contest the conviction and

8    the sentence or the manner in which the sentence was imposed in

9    any postconviction proceeding.  And that includes a motion

10   under 28 U.S.C. Section 2255.  The defendant does reserve the

11   right to appeal based on the ineffective assistance of counsel

12   claims, Your Honor.

13          The defendant also waives any right to seek attorney's

14   fees or costs under the Hyde Amendment; and he also agrees to

15   waive, whether asserted directly or by a representative, a

16   request for any information under the Privacy Act or the

17   Freedom of Information Act concerning his case, Your Honor.

18          The defendant also agrees and understands that any

19   factual issues regarding his sentencing will be resolved by the

20   court under a preponderance of the evidence standard, and he

21   waives any jury determination right to those issues.

22          He also agrees, Your Honor, that in making its

23   sentencing decision the court may consider any relevant

24   evidence without regard to its admissibility under the rules of

25   evidence at a trial of the matter.  Those are the key waivers

1    set forth in the actual plea agreement, Your Honor.

2          THE COURT:  All right.  Thank you.

3          MR. RUSHING:  It has been signed by myself, by the

4    defendant and also by defendant's counsel, Your Honor.

5          THE COURT:  All right.  Thank you.  Mr. Knott, is that

6    consistent with your understanding?

7          MR. KNOTT:  It is, Your Honor.

8          THE COURT:  And, Mr. Shelby, is it consistent with

9    your understanding?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, of course, those are just the

12    highlights; but you're telling me that you've read, discussed

13    and understand all of the terms.  Is that right?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  And in particular I want to look at

16    paragraph 8.  It starts on page 4, and there's subparagraphs

17    (a) through (e) that run through page 6 of your plea agreement.

18    This lists a number of things that you're waiving or giving up.

19          Now, you have not waived the right to claim

20    ineffective assistance of counsel, but you are in this

21    agreement waiving the right to appeal the conviction and

22    sentence imposed in this case or the manner in which that

23    sentence was imposed on any grounds whatsoever.

24          You're also waiving the right to contest the

25    conviction and sentence or manner in which the sentence was

1  imposed in any postconviction proceeding, including, but not

2  limited to, a motion under 28 U.S.C. Section 2255.

3        So, again, have you discussed these waivers and what

4  you're giving up with your attorney?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  Are you -- do you understand what you're

7  giving up?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  And are you knowingly and voluntarily

10 agreeing to those waivers in paragraph 8 along with all of the

11 other terms of both the plea and the plea supplement?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Okay.  Do the terms of the plea agreement

14 and the supplement represent your entire understanding with the

15 government?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Has anyone made any other or different

18 promises or assurances of any kind in an effort to induce you

19 to plead guilty in this case?

20        THE DEFENDANT:  No, sir.

21        THE COURT:  I'm sorry?

22        THE DEFENDANT:  No, sir.

23        THE COURT:  And do you understand that the terms of

24 the plea agreement and the supplement are merely

25 recommendations to the court and that I can reject the

1    recommendations without permitting you to withdraw your plea of

2    guilty and impose a sentence that's more severe than you may

3    anticipate?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Mr. Rushing, when I sat down, I realized

6    that I had not looked to see if there were any stipulations.  I

7    didn't quickly see any.  Are there any?

8            MR. RUSHING:  There are not, Your Honor.

9            THE COURT:  Mr. Knott, do you have a copy of the two

10    documents?

11            MR. KNOTT:  Yes, sir.  May I approach?

12            THE COURT:  Yes, sir.  Thank you.

13            MR. RUSHING:  And, Your Honor, for the record also, I

14    want to make the court aware that is the only plea offer made

15    by the government to the defendant in this case.

16            THE COURT:  Okay.  Thank you.

17        (DOCUMENT TENDERED TO THE COURT)

18            THE COURT:  All right.  The plea agreement appears to

19    be in order.  It's a seven-page document, and it has been fully

20    executed.  It will be received in the record.  The supplement

21    also appears to be in order.  It is a five-page document, and

22    it is also fully executed.  It will be received under seal.

23    Has anyone attempted in any way to force you to plead guilty in

24    this case?

25            THE DEFENDANT:  No, sir.

```
1          THE COURT:  Are you pleading guilty of your own free
2   will because you are guilty of Count 1?
3          THE DEFENDANT:  Yes, sir.
4          THE COURT:  Do you understand that the offense to
5   which you're pleading guilty is a felony offense?
6          THE DEFENDANT:  Yes, sir.
7          THE COURT:  Do you understand if that plea is
8   accepted, you will be adjudicated guilty of that offense?
9          THE DEFENDANT:  Yes, sir.
10         THE COURT:  And do you understand that such
11  adjudication may deprive you of valuable civil rights such as
12  the right to vote, the right to hold public office, the right
13  to serve on a jury, and the right to possess any kind of
14  firearm?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  I also need to make sure you understand
17  the maximum possible penalties provided by law and the
18  mandatory minimum penalties.  Count 1 charges you under 21
19  U.S.C. Section 846 for conspiracy to possess with the intent to
20  distribute 500 grams or more of cocaine hydrochloride.  Do you
21  understand that Count 1 carries a term of incarceration of not
22  less than five years and not more than 40 years?
23         THE DEFENDANT:  Yes, sir.
24         THE COURT:  Do you understand that it carries a fine
25  of up to $5 million?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that it carries a term

3     of supervised release of not less than four years?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you understand that the term of

6     supervised release would be imposed in addition to any sentence

7     of incarceration you receive?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And do you know that while you're on

10    supervised release there are going to be rules you have to

11    follow?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And do you understand if you break the

14    rules, you could be sent back to jail?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  And do you also understand if that were to

17    happen that you could be sent back to jail for the full term of

18    supervised release and you wouldn't get any credit for any time

19    you had already served on supervised release?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Okay.  Do you understand that because this

22    statute carries a maximum sentence of 25 years or more that a

23    sentence of probation is not available?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right.  And do you understand that if

1  applicable, the court could order you to make restitution to

2  any victims of the offense or require you to forfeit certain

3  property to the government?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Do you understand that there is a

6  mandatory special assessment of $100 per count?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  All right.  And do you further understand

9  that all these things I've just listed are possible

10  consequences of entering a plea of guilt?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  All right.  Have you had a chance to

13  discuss the sentencing guidelines with Mr. Knott?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  And you understand that they exist to help

16  me determine what the appropriate sentence is in your case?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Okay.  And do you understand that I cannot

19  determine that guideline sentence for your case until after the

20  presentence report has been completed and you and the

21  government have had a chance to challenge the reported facts

22  and the applications of the guidelines recommended by the

23  probation officer?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Do you also understand that the sentence

1  that is ultimately imposed may be different from any estimate

2  your attorney may have given you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Of course, that means that your attorney

5  may have given you an estimate, but that you're knowingly and

6  voluntarily agreeing to plea under a statute that carries a

7  maximum sentence of up to 40 years.  Do you understand?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you also understand that the guidelines

10 are advisory only and, while I will consider them, I'm not

11 required to follow them?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Okay.  Of course, that means that once we

14 determine what your guideline sentence is that I would have the

15 discretion to enter a sentence that's either greater or less

16 than the sentence called for by the guidelines, keeping in mind

17 that there is a mandatory minimum sentence.  Do you understand?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.  Do you also understand that

20 parole has been abolished and that if you're sentenced to

21 prison you will not be released on parole?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  I also want to make sure that

24 in entering this plea you understand that you're going to waive

25 or give up some rights that you would otherwise have with

1  respect to the criminal prosecution.  Do you understand that

2  you have the right to plead not guilty to any offense that's

3  charged against you and to persist in that plea?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you understand that you would then have

6  the right to a trial by jury?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that at trial you'd be

9  presumed innocent and the government would have to prove your

10  guilt beyond a reasonable doubt?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And do you understand that you'd have the

13  right to the assistance of counsel for your defense at trial

14  and at every stage of the proceedings and, if necessary, I

15  would appoint an attorney for you?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand that you could see and

18  hear all of the witnesses and have them cross-examined in your

19  defense at trial?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Do you understand that you would have the

22  right on your own part to decline to testify unless you

23  voluntarily elected to do so in your own defense?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you understand that you would have the

1    right to issue subpoenas that would compel witnesses to come to

2    trial and testify in your defense?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you understand that should you decide

5    not to testify or put on any evidence at all, that I would

6    instruct the jury that those facts could not be used against

7    you?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Do you further understand that by entering

10    a plea of guilty as to Count 1, that if I accept the plea there

11    will be no trial and you will have waived or given up the right

12    to a trial along with all of these other rights related to

13    trials that we just discussed?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  I also need to make sure you understand

16    what's called the essential elements of the offense.  These are

17    the things that the government must prove before a jury could

18    find you guilty of the charges in Count 1.

19            Before I read them I want you to keep in mind that,

20    first, it's the government's burden of proving each and every

21    one of the essential elements and, second, that the government

22    would have to do so beyond a reasonable doubt.

23            In this case you're charged in a conspiracy count.  So

24    I'm going to read the elements of what constitutes conspiracy.

25    Then after that I'm going to read the elements that would apply

1  to the charge that you've been charged with conspiring to

2  commit, if that makes sense.  You're following me better than I

3  am, aren't you?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  All right.  You're charged under 21

6  U.S.C. Section 841(a)(1) which makes it a crime for anyone

7  knowingly or -- I'm sorry.  I'm sorry.  I got that out of

8  order.  I'm going to start with 21 U.S.C. Section 846 which

9  makes it a crime for anyone to conspire with someone else to

10  commit a violation of certain controlled substances laws of the

11  United States.

12          In this case you're charged with conspiring to possess

13  with intent to distribute a controlled substance.  A conspiracy

14  is an agreement between two or more persons to join together to

15  accomplish some unlawful purpose.  It is a kind of partnership

16  in crime in which each member becomes the agent of every other

17  member.  For a jury to find you guilty of this offense it would

18  have to be convinced that the government has proven each of the

19  following four elements beyond a reasonable doubt.

20          First:  That two or more persons, directly or

21  indirectly, reached an agreement to possess with intent to

22  distribute a controlled substance, that is, cocaine

23  hydrochloride;

24          Second:  That the defendant knew of the unlawful

25  purpose of the agreement;

1    Third:  That the defendant joined in the agreement

2    willfully, that is, with the intent to further its unlawful

3    purpose; and,

4    Fourth:  That the overall scope of the conspiracy that

5    the defendant knew or was reasonably foreseeable to him

6    involved at least 500 grams of a detectable amount of cocaine

7    hydrochloride.

8    Title 21, United States Code, makes it a crime for

9    anyone who attempts to commit a violation of certain controlled

10   substances laws of the United States.  In this case you're

11   charged with conspiring to violate this section.  In order to

12   obtain a conviction of this section the government would have

13   to prove each of the following beyond a reasonable doubt.

14   First:  That the defendant attempted to distribute a

15   controlled substance; and,

16   Second:  That the attempt involved more than 500 grams

17   of a detectable amount of cocaine hydrochloride.

18   All right.  Have you had a chance to discuss those

19   elements with Mr. Knott?

20   THE DEFENDANT:  Yes.

21   THE COURT:  And do you understand that the government

22   would have to prove each essential element beyond a reasonable

23   doubt before a jury could find you guilty?

24   THE DEFENDANT:  Yes, sir.

25   THE COURT:  Do you substantively understand what the

1    government would have to prove as to each of those elements?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  All right.  And, Mr. Knott, would you

4    agree you've had those conversations and that your client does

5    understand the essential elements of the offense?

6         MR. KNOTT:  I believe he understands, Your Honor, yes.

7         THE COURT:  Thank you.  All right.  Mr. Shelby, at

8    this point Mr. Rushing is going to tell us the facts that he

9    would have presented to the jury had you elected to go trial.

10   And I'll need for you to listen closely to what he says because

11   when he finishes, I'm going to ask if you agree with what he

12   told us.

13        THE DEFENDANT:  Okay.

14        MR. RUSHING:  Your Honor, if this matter would have

15   gone to trial, the government would have shown through the

16   introduction of exhibits and testimony that in October of 2015

17   the DEA was conducting an investigation into the drug

18   trafficking of cocaine hydrochloride in the Jackson,

19   Mississippi, area.

20        On October 24th, 2015, the DEA intercepted some

21   conversations between Jose Belmonte-Nunez and the defendant,

22   Marcus Shelby.  In one conversation Nunez tells Mr. Shelby that

23   a day or two -- a day or two days after Marcus Shelby had

24   called Mr. Nunez, that they had showed up and that he had it

25   since.  Nunez also tells Mr. Shelby that he hasn't given it to

1    anybody.  Mr. Shelby tells Mr. Nunez that another person has

2    been doing better numbers, indicating someone else had been

3    selling the cocaine for a cheaper price.

4           On October 25th, 2015, Mr. Shelby called Mr. Nunez and

5    asked Mr. Nunez, *How long is it going to be before I can what*

6    *you call it?*  Mr. Shelby later called Mr. Nunez back and asked

7    Mr. Nunez where does he want to meet.  At that point Mr. Nunez

8    gives Mr. Shelby directions to a house.

9           Agents began surveillance on that house and they saw

10   the Toyota Avalon that Mr. Shelby drives.  That was located at

11   119 Stokes Robertson Road in Jackson, Mississippi.  Agents

12   later saw the same vehicle, Mr. Shelby's vehicle, leaving the

13   residence.

14          The DEA obtained the assistance of a Mississippi

15   Highway patrol officer who stopped the vehicle Mr. Shelby was

16   driving.  Mr. Shelby gave the officer his license and took his

17   license away from the officer.  The officer then attempted to

18   get the license back, and Mr. Shelby fled the scene dragging

19   the officer across the pavement.  Other agents attempted to

20   stop Mr. Shelby, but Mr. Shelby continued to flee and struck

21   two other vehicles.

22          Mr. Shelby abandoned his vehicle at a residence on

23   Horton Street in Jackson, Mississippi.  A search of that

24   vehicle revealed a .22-caliber pistol located between the

25   driver's seat and the console area of the vehicle.  They also

1  located an invitation to a wedding with Mr. Shelby's name on

2  it, Your Honor.

3         On October 26th, 2015, agents were able to hear

4  another conversation where Mr. Shelby told Mr. Nunez that he

5  was going to give what he has left and put it in a bag and put

6  it on that porch.  Shelby then tells Mr. Nunez to watch the

7  news.

8         Later on, October 26th, 2015, agents were able to hear

9  a conversation between Mr. Nunez and another person.  Mr. Nunez

10  told this person that law enforcement had chased him, meaning

11  Mr. Shelby, and that Mr. Shelby had abandoned the car.

12  Mr. Nunez said the guy, Mr. Shelby, showed up and got two,

13  which the government contends are two kilos of cocaine

14  hydrochloride.

15         That he also said that Mr. Shelby had a whole one he

16  was going to drop off as a whole and was going to break the

17  other one up and deliver it in parts.  Mr. Nunez says he didn't

18  know how much Mr. Shelby had left.

19         Agents had previously overheard a conversation with

20  Mr. Nunez and another person where Mr. Nunez told that person

21  he was selling them for 32, and the government contends that

22  means $32,000 a kilo.

23         On October 28th, 2015, agents overheard a conversation

24  with Mr. Nunez about going to meet with a person to conduct a

25  narcotics transaction.  Agents went to the location and saw a

1    Kia vehicle with a Texas plate leave the gas station and that
2    vehicle followed Mr. Nunez.
3            Agents stopped that vehicle, the Kia, and they found
4    2,979 grams of cocaine hydrochloride in a pillow that the
5    codefendant in this case Teofila Sanchez-Chavez was sitting on.
6    The government contends, Your Honor, that there were two
7    kilos -- there were two, of course, kilos obtained by
8    Mr. Shelby that day from Mr. Nunez.  All these acts occurred in
9    the Southern District of Mississippi and within the
10   jurisdiction of this court, Your Honor.
11           THE COURT:  All right.  Thank you.  Mr. Shelby, did
12   you hear and understand everything that Mr. Rushing told us?
13           THE DEFENDANT:  Yes, sir, I did.
14           THE COURT:  And do you agree with the facts that he
15   just told us?
16           THE DEFENDANT:  No --
17           MR. KNOTT:  Court's indulgence.
18           THE COURT:  Sure.
19           MR. KNOTT:  Your Honor, Mr. Shelby agrees that there
20   was a conspiracy as outlined in the indictment.  He agrees to
21   several of the things that were indicated which would fall
22   within that conspiracy.  As to the amount of drugs that the
23   government has indicated, as to the incident with the officers,
24   that type of thing, as indicated, we do dispute those
25   instances.

1    But the material offense with respect to conspiracy he

2 does not dispute.  In other words, we do not believe that he

3 has to admit to those collateral matters to agree that there

4 was a conspiracy.

5    THE COURT:  All right.  So let me just walk through it

6 if I could.  Mr. Shelby, do you agree that two or more persons

7 reached an agreement with the intent to possess and distribute

8 a controlled substance?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  And do you agree that you knew of the

11 unlawful purpose of that agreement?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  And do you agree that you joined in the

14 agreement willfully, that is, with the intent to further that

15 purpose?

16    THE DEFENDANT:  Yes, sir.

17    THE COURT:  And do you agree that the overall scope of

18 the conspiracy that you knew of or could reasonably foresee

19 involved at least 500 grams of a detectable amount of cocaine

20 hydrochloride?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  And do you agree that there were attempts

23 to distribute the controlled substance?

24    THE DEFENDANT:  Yes, sir.

25    THE COURT:  Okay.  All right.  Mr. Rushing, are you

1    satisfied with that?

2            MR. RUSHING:  Your Honor, I want to make sure he does

3    agree I guess -- I know that certain parts he can't agree to

4    concerning the police officer situation.  I think he has

5    charges somewhere else.

6            But does he agree that from what I've read in there

7    concerning the facts that he obtained on that particular day

8    500 kilograms -- at least 500 kilograms of cocaine

9    hydrochloride from Mr. Nunez that particular day?  That's what

10   I need.

11           THE COURT:  Is it 500 kilograms or 500 --

12           MR. RUSHING:  500 grams, Your Honor.  I'm sorry.  At

13   least 500 grams of cocaine hydrochloride from Mr. Nunez as I

14   read in the factual issues.

15           THE COURT:  Sure.  All right.  Mr. Shelby, do you

16   agree that you received at least 500 grams from the

17   coconspirator?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Okay.  All right.  Mr. Rushing, are you

20   satisfied we have --

21           MR. RUSHING:  I'm satisfied, Your Honor.

22           THE COURT:  All right.  Okay.  Mr. Shelby, how do you

23   now wish to plead, guilty or not guilty, as to Count 1?

24           THE DEFENDANT:  Guilty.

25           THE COURT:  It's the finding of the court in the case

1    of *United States v. Marcus Shelby* that having viewed the

2    defendant in court and considered his demeanor and responses,

3    that the defendant is aware -- I'm sorry -- the defendant is

4    fully competent and capable of entering an informed plea, that

5    the defendant is aware of the nature of the charges and the

6    consequences of the plea, and that the plea of guilty is a

7    knowing and voluntary plea supported by an independent basis in

8    fact containing each of the essential elements of the offense.

9    The plea is, therefore, accepted and the defendant is now

10   adjudged guilty of that offense.

11          Counsel, I'm looking at March 20th as a sentencing

12   date.  How does that look to everybody?

13          MR. RUSHING:  That's good for me, Your Honor.

14          MR. KNOTT:  Judge, I'm looking at my calendar as we

15   speak.  That's a Monday?

16          THE COURT:  Yes.  There's nothing magic about that

17   date.  I can move it later in the week if that's better,

18   Mr. Knott.  I can't move it up, but I can move it back a little

19   bit.

20          MR. KNOTT:  Okay.  Court's indulgence.

21      (PAUSE)

22          MR. KNOTT:  Judge, could you clarify the last sentence

23   you said about moving it back or moving it up?

24          THE COURT:  Sure.  I can't move it up.  In other

25   words, the earliest is going to be the 20th.  But if you want

1    to move it back from the 20th, I can.

2              MR. KNOTT:  No, that day is acceptable to us, Your

3    Honor.

4              THE COURT:  Okay.  So 9:00 on the 20th.

5              Mr. Shelby, between now and then the United States

6    Probation Office is going to prepare a presentence report.

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  It's going to have information in there

9    about your background, education, work history, things like

10   that, and also about this offense.  It will also include a

11   calculation of the guideline range.  Once you get the report --

12   and you'll get it the same time as Mr. Rushing -- you will both

13   have an opportunity to make objections if there are things in

14   there that you don't agree with.

15             A lot of times the objections can get worked out; but

16   if they can't, I will rule on the objections when we come back

17   for your sentencing.

18             You will probably start the process of putting that

19   report together as soon as I walk out of here.  Officer Whitver

20   here will probably get you started by getting some information.

21   You have the right to have Mr. Knott or any attorney with you

22   whenever you meet with probation officers, and I would strongly

23   encourage you to make sure that your attorney is on hand when

24   you have those meetings.  Okay?

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  Also when we come back for the sentencing,

2    you will at that time have what's called the right of

3    allocution.  You'll be able to tell me anything that you think

4    I need to know before the sentence is imposed.  And you can

5    have Mr. Knott speak for you.  You can speak for yourself if

6    you choose.  It will be entirely up to you, but you will have

7    that opportunity when we come back.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Mr. Rushing, anything further

10   from your side?

11         MR. RUSHING:  No, Your Honor.

12         THE COURT:  Mr. Knott?

13         MR. KNOTT:  Court's indulgence.

14         THE COURT:  Yes.

15     (PAUSE)

16         MR. KNOTT:  If it pleases the court, Mr. Shelby wanted

17   me to ask the court if you would consider -- given that his

18   sentence is in March, if you would consider releasing him on

19   bond until that time.  He -- this was his first felony

20   conviction.  He is married.  He's been married for

21   approximately one year.  His wife is in the courtroom today.

22   And so he's requesting some type of bond release until the day

23   of sentencing.

24         THE COURT:  All right.  Thank you.  Mr. Shelby, there

25   are certain offenses for which I lack discretion to release you

1   on bond.  A drug offense with a potential sentence of greater

2   than ten years falls within that category.  Absent

3   extraordinary circumstances, the court just by statute cannot

4   grant that.  So your request is denied.

5         All right.  Anything else, Mr. Knott?

6         MR. KNOTT:  No, Your Honor.

7         THE COURT:  All right.  Thank you.  Mr. Rushing, I'd

8   like to see both of you for just a second.  Otherwise, we're

9   adjourned.

10    (HEARING CONCLUDED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

1

2

3        I, MARY VIRGINIA "Gina" MORRIS, Official Court

4  Reporter, United States District Court, Southern District of

5  Mississippi, do hereby certify that the above and foregoing

6  pages contain a full, true and correct transcript of the

7  proceedings had in the aforenamed case at the time and

8  place indicated, which proceedings were recorded by me to

9  the best of my skill and ability.

10        I certify that the transcript fees and format

11  comply with those prescribed by the Court and Judicial

12  Conference of the United States.

13        This the 23rd day of October, 2018.

14

15                    s/ Gina Morris
                    _____
16                    U.S. DISTRICT COURT REPORTER

17

18

19

20

21

22

23

24

25